2003 OK 61

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Cordes Martin GIGER, Respondent,**

**and**

**State of Oklahoma ex rel. Oklahoma Bar Association, Complainant,**

v.

**Cordes Martin Giger, Respondent.**

**SCBD Nos. 4529, 4734.**

Supreme Court of Oklahoma.

June 10, 2003.

---

Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Tate Wise, Oklahoma City, OK, for Respondent.

OPALA, V.C.J.

¶ 1 In these disciplinary proceedings against a lawyer, the issues to be decided are: (1) Does the record submitted for our examination provide sufficient evidence for a meaningful *de novo* consideration of the merits and disposition of both the motion for

additional discipline and of the complaint?[1] and (2) Is a suspension from the practice of law for two years and one day an appropriate disciplinary sanction for respondent's breach of professional ethics? We answer both questions in the affirmative.

## I

## INTRODUCTION TO THE RECORD

¶ 2 On 13 November 2001 the court held in *State ex rel. Oklahoma Bar Association v. Giger* (*Giger I*)[2] that Cordes Martin Giger (Giger or respondent) had engaged in professional misconduct warranting sanctions. We suspended respondent from the practice of law for one year, placed him under conditioned supervision for two years, and directed him to pay the costs of the proceeding. The provisions of respondent's conditioned supervision required him to (1) abide by the Rules of Professional Conduct; (2) cooperate with and participate in the Lawyers Helping Lawyers (LHL) program; (3) refrain from the use or possession of any illegal drug; and (4) remain unimpaired from the use of any legal substance, whether prescribed or not, that might interfere with his ability to function as a lawyer.

¶ 3 On 31 May 2002 the Oklahoma Bar Association (the Bar) filed a motion to impose additional discipline on respondent for violating the terms of his conditioned supervision by: (1) engaging in the practice of law while under suspension; (2) failing to comply with the court's order that he cooperate with and participate in the LHL program; (3) failing to comply with an order of the Cleveland County District Court that he participate in the LHL program as a condition of probation in several drug-related criminal cases; and (4) entering a plea of *nolo contendere* in Cleveland County District Court to petty larceny. Giger tendered no response to the motion and we referred the matter for hearing to the trial panel that had originally heard Giger I.[3] A hearing was set for 21 August 2002.

¶ 4 While the motion to assess additional discipline was pending, the Bar initiated a formal disciplinary proceeding against respondent arising out of a grievance filed by Jimmy Travis Benson (Giger II or the Benson complaint). Respondent provided the Bar with a detailed response to Mr. Benson's informal grievance, denying his accusations, but did not file a response to the Bar's formal complaint.

¶ 5 The Benson complaint was set for hearing on 6 August 2002 before a different trial panel than that assigned to hear the motion for additional discipline. At the suggestion of the Bar and with respondent's approval, the trial panel assigned to hear the Benson complaint decided to transfer that complaint to the trial panel assigned to hear the motion to impose additional discipline and directed the Bar to seek an order to that effect from this court.[4] We then issued an order com-

---

1. The record consists of five transcripts of proceedings held before a trial panel of the Professional Responsibility Tribunal, multiple exhibits that were admitted into evidence at a hearing or other proceeding, separate trial panel reports submitted in SCBD No. 4529 by the panel's presiding master and by its lawyer member, and a trial panel report in SCBD No. 4734.

2. 2001 OK 96, 37 P.3d 856.

3. The trial panel which heard Giger I had ceased to operate and two of its participants were no longer members of the Professional Responsibility Tribunal. We ordered the original trial panel to be reactivated for the purpose of conducting this proceeding.

4. Mr. Benson, the complaining witness, was present at the hearing but was not consulted about postponing his testimony to a later date. Mr. Benson was unable to attend the 21 August hearing or any subsequently scheduled hearing because of conflicting work obligations. Without his testimony, the Bar was unable to sustain its burden of proof in Giger II. We propose that in the future a trial panel considering whether to continue a proceeding when all the necessary witnesses are present should consult such witnesses about their ability to appear at a later date. While we recognize the benefit to judicial efficiency and convenience gained by combining these two matters for hearing, it would behoove those whose task it is to protect the public to remember that many persons cannot appear at multiple hearings without suffering a loss of income. It would have been far better if we had Mr. Benson's testimony in this case even if it meant that two different trial panels were to be involved. As it now stands, we can do nothing to address Mr. Benson's grievance.

bining the two cases for hearing purposes only, directing that they otherwise retain their separate identities and be resolved by independent dispositions.

¶ 6 Accordingly, Giger II was consolidated (with the motion for additional discipline) for hearing on 21 August 2002. Evidence was received on that date on the motion, but because Mr. Benson failed to appear, the trial panel heard no testimony on the complaint. Another hearing was scheduled for 23 October 2002 to take up the Benson complaint, but neither Mr. Benson nor respondent appeared at that hearing. Upon being reached by telephone at his residence by a member of the panel, respondent denied that he had received notice of the hearing, which had been sent to him by regular mail.

¶ 7 A final attempt to hear testimony on the Benson complaint was made on 16 January 2003. Respondent, having been personally served with notice of the hearing, appeared. Mr. Benson, who had informed the Bar that he would not be able to appear, agreed to testify by cell phone but could not be reached. The trial panel, only two of whose three members were present, nevertheless received testimony from respondent regarding Mr. Benson's grievance as well as further testimony relating to the motion to assess additional discipline. At the hearing's

conclusion, the Bar conceded that it had not proved the allegations of the Benson complaint by clear and convincing evidence.[5]

¶ 8 The panel members,[6] unable to agree on the particulars of respondent's noncompliance with the court's order in Giger I, filed separate reports setting out their findings of fact, conclusions of law, and recommendation in that matter. The presiding master concluded that respondent had committed two violations of the Giger I order—practising law while under suspension and failing to comply with the terms of the Cleveland County probation in contravention of Rule 8.4(b)[7] of the Oklahoma Rules of Professional Conduct. She recommended that respondent be disbarred.[8] The lawyer member of the panel found only a single breach of the Giger I order—failing to participate in the LHL program. He recommended that respondent be suspended for an additional two years and one day.

¶ 9 With respect to Giger II, the trial panel concluded that there was not a sufficient record for this court's *de novo* review.

¶ 10 The Bar has filed an application to assess against respondent the costs of this proceeding in the amount of $2,010.06. Respondent has not filed a brief nor has he responded to the Bar's application to assess costs.

---

5. The Bar appropriately made no attempt to terminate the proceeding despite its admission that it had not met its burden of proof. Once a disciplinary prosecution has been initiated, it can be terminated only by this court upon its *de novo* review of the proceedings. *State ex rel. Okl. Bar Ass'n v. Caldwell*, 1994 OK 57, ¶ 4, 880 P.2d 349, 352.

6. Only the two panel members who were able to attend the final hearing in this matter filed reports.

7. The pertinent provisions of Rule 8.4(b), Oklahoma Rules of Professional Conduct, 5 O.S.2001 Ch.1, App. 3–A, state:
   "It is professional misconduct for a lawyer to:
   * * *
   (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; ..."

8. The presiding master interpreted the court's Giger I opinion as establishing a two-stage process: a suspension of one year followed by two years of conditioned supervision. Thus, in her view, the period of supervision did not begin until 13 November 2002. Accordingly, she exonerated respondent of the alleged violations of the order of conditioned supervision since they were based on conduct occurring before 13 November 2002. We reject the presiding master's interpretation of Giger I in light of that opinion's disposition clause, which states:

   "Respondent is suspended from the practice of law for one year and placed under conditioned supervision for two years, *both the suspension and supervision to begin on the day this opinion becomes final, ...*" (emphasis added)

## II

### THE RECORD BEFORE THE COURT PROVIDES SUFFICIENT EVIDENCE FOR A MEANINGFUL *DE NOVO* CONSIDERATION OF ALL FACTS RELEVANT TO THIS PROCEEDING

¶ 11 In a bar disciplinary proceeding the court functions as an adjudicative licensing authority that exercises exclusive original cognizance.[9] Its jurisdiction rests on the court's constitutionally vested, nondelegable power to regulate the practice of law, including the licensure, ethics, and discipline of this state's legal practitioners.[10] In deciding whether discipline is warranted and what sanction, if any, is to be imposed for the misconduct charged, the court conducts a full-scale, nondeferential, *de novo* examination of all relevant facts,[11] in which the conclusions and recommendations of the trial panel are neither binding nor persuasive.[12] In this undertaking we are not restricted by the scope-of-review rules that govern corrective relief on appeal or certiorari proceedings in which another tribunal's findings of fact may have to be left undisturbed by adherence to the law-imposed standards of deference.[13]

¶ 12 The court's duty can be discharged only if the trial panel submits a complete record of the proceedings.[14] Our initial task is to ascertain whether the tendered record is sufficient to permit (a) an independent determination of the facts and (b) the crafting of an appropriate discipline. The latter is that which (1) is consistent with the discipline imposed upon other lawyers who have committed similar acts of professional misconduct and (2) avoids the vice of visiting disparate treatment on the offending lawyer.[15]

9. *State ex rel. Okl. Bar Ass'n v. Leigh,* 1996 OK 37, ¶ 11, 914 P.2d 661, 666; *State ex rel. Okl. Bar Ass'n v. Eakin,* 1995 OK 106, ¶ 8, 914 P.2d 644, 647; *State ex rel. Okl. Bar Ass'n v. Bolton,* 1994 OK 53, ¶ 15, 880 P.2d 339, 344; *State ex rel. Okl. Bar Ass'n v. Donnelly,* 1992 OK 164, ¶ 11, 848 P.2d 543, 545; *State ex rel. Okl. Bar Ass'n v. Raskin,* 1982 OK 39, ¶ 11, 642 P.2d 262, 265; *In re Integration of State Bar of Oklahoma,* 1939 OK 378, ¶ 11, 95 P.2d 113, 114.

10. *Eakin, supra* note 9 at ¶ 8, at 648; *State ex rel. Okl. Bar Ass'n v. Downing,* 1990 OK 102, ¶ 12, 804 P.2d 1120, 1122–1123; *Raskin, supra* note 9 at ¶ 11, at 265–266.

11. *Leigh, supra* note 9 at ¶ 11, at 666–667; *Eakin, supra* note 9 at ¶ 8, at 647–648; *State ex rel. Okl. Bar Ass'n v. Lloyd,* 1990 OK 14, ¶ 8, 787 P.2d 855, 858; *State ex rel. Okl. Bar Ass'n v. Stubblefield,* 1988 OK 141, ¶ 7, 766 P.2d 979, 982; *State ex rel. Okl. Bar Ass'n v. Cantrell,* 1987 OK 17, ¶ 1, 734 P.2d 1292, 1293; *State ex rel. Okl. Bar Ass'n v. Brandon,* 1969 OK 28, ¶ 5, 450 P.2d 824, 827. Because this court's cognizance of disciplinary proceedings cannot be shared with any other institution, every aspect of the Bar's adjudicative process must be revisited by our *de novo* consideration. The attribute of nondelegable jurisdiction serves to distinguish the conduct of bar disciplinary functions from trial *de novo*—a retrial in a different court—or even from *de novo* appellate review on the record, which stands for an independent, non-deferential examination *of another tribunal's record.*

12. *Eakin, supra* note 9 at ¶ 8, at 648; *Raskin, supra* note 9 at ¶ 11, at 265. The court's range of options in a disciplinary proceeding is set forth in Rule 6.15(a), Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch.1, App. 1–A, which states in pertinent part:

> "The Supreme Court may approve the Trial Panel's findings of fact or make its own independent findings, impose discipline, dismiss the proceedings or take such other action as it deems appropriate."

13. *Bolton, supra* note 9 at ¶ 15, at 344; *Eakin, supra* note 9 at ¶ 8, at 648; *State ex rel. Okl. Bar Ass'n v. Farrant,* 1994 OK 13, ¶ 7, 867 P.2d 1279, 1284; *Levi v. Mississippi State Bar,* 436 So.2d 781, 782 (Miss.1983).

14. The provisions of Rule 6.13, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App.1–A, state in pertinent part:

> "Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendation as to whether the costs of the investigation, record and proceedings should be imposed on the respondent), and shall be accompanied by all pleadings, a transcript of the proceeding, and all exhibits offered thereat. . . ."

15. *Eakin, supra* note 9 at ¶ 9, at 648; *Bolton, supra* note 9 at ¶ 16, at 345; *State ex rel. Okl. Bar Ass'n v. Perceful,* 1990 OK 72, ¶ 5, 796 P.2d 627, 630.

¶ 13 Having carefully scrutinized the record submitted in these proceedings, we conclude that it is adequate for *de novo* consideration of respondent's alleged professional misconduct as set forth in both the motion for ·additional discipline and in the Benson complaint.

## III

### THE CHARGES AGAINST RESPONDENT

#### A. *The Motion To Impose Additional Discipline*

■■ ¶ 14 1. *Practicing law while under suspension.* The court's opinion in Giger I, which suspended respondent from the practice of law, was handed down on 13 November 2001. The record shows that respondent appeared as a lawyer on behalf of his wife in Cleveland County District Court on 6 December 2001. The Bar alleges that the Giger I opinion was final and effective on the date it was issued so that respondent's 6 December court appearance was in violation of that order. If *proved*, respondent's conduct would constitute both a violation of the suspension order [16] as well as a violation of the supervision order, which was conditioned on

fidelity to the Rules of Professional Conduct.[17] Respondent conceded at the hearing that he did indeed practice law while under suspension, but claimed he did so under the erroneous impression—given him by an employee of the Bar—that there was some period of latency in which he could continue practicing without violating the order.

■■ ¶ 15 Whether respondent violated the Giger I order by appearing in court on 6 December 2001 depends upon when the Giger I opinion became operative, a point in time the court has not until now been called upon precisely to define. This Court exercises original jurisdiction in lawyer discipline cases.[18] An order issuing from a bar disciplinary proceeding, unlike an opinion pronounced on appeal or certiorari, does not require a mandate to be delivered to a lower tribunal to mark its effective date.[19] The effective date of most original proceedings is governed by Rule 1.193 of the Oklahoma Supreme Court Rules, which provides that the decision of this court in all original proceedings *except those* to review a decision of the Workers Compensation Court or *to impose Bar discipline*, unless stayed, *becomes effective when the opinion or order is filed*

16. The unauthorized practice of law is prohibited by Rule 5.5(a), Oklahoma Rules of Professional Conduct, 5 O.S.2001 Ch. 1, App. 3–A, which states in pertinent part:
    "A lawyer shall not:
    (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; ..."

17. The fact that the Bar did not allege a violation of the suspension order does not affect the range of the court's discretion in this matter. It is the duty of this court, not that of the parties, to examine the facts *de novo* and determine which ethical rules are applicable. *State ex rel. Okl. Bar Ass'n v. Bolusky*, 2001 OK 26, ¶ 8, 23 P.3d 268, 272. Compliance with due process simply requires the Bar to allege facts sufficient to put the accused lawyer on notice of the conduct upon which the charges of professional misconduct are based. *State ex rel. Okl. Bar Ass'n v. Johnston*, 1993 OK 91, ¶ 19, 863 P.2d 1136, 1143 ("The Bar need only plead sufficient facts that will put the accused attorney on notice of the charges and give him an opportunity to respond to the facts alleged.").

18. *State ex rel. Okl. Bar Ass'n v. Bourland*, 2001 OK 12, ¶ 13, 19 P.3d 289, 291.

19. A mandate is this court's post-opinion order commanding the trial court to comply with an appellate pronouncement. *Smedsrud v. Powell*, 2002 OK 87, ¶ 16, n. 25, 61 P.3d 891, 897, n. 25; *Berland's Inc. of Tulsa v. Northside Village Shopping Center, Inc.*, 1968 OK 136, ¶ 7, 447 P.2d 768, 770; *Gilliland v. Bilby*, 1916 OK 340, ¶¶ 4–5, 156 P. 299, 300. *See* the provisions of Rule 1.16, Oklahoma Supreme Court Rules, 12 O.S. 2001 Ch. 15, App. 1, which state in pertinent part:

    "In every appeal or petition to review any order of a district court or other tribunal, a mandate will be issued to the lower court or tribunal on order of the Chief Justice upon conclusion of the matter on appeal. The mandate may be issued seven (7) days after the filing of an order denying certiorari or rehearing in the Supreme Court or expiration of time to file a petition for writ of certiorari or petition for rehearing, and disposition of any timely filed post-decisional motion. *No mandate is issued upon conclusion of* original actions, questions certified by federal courts, *bar disciplinary matters*, or original proceedings on initiative or referendum petitions."

*with the clerk.*[20] No Supreme Court rule addresses the effective date of decisions to impose Bar discipline.

¶ 16 The provisions of Rule 6.15 of the Rules Governing Disciplinary Proceedings (RGDP) give a disciplined lawyer twenty (20) days from the date the court's decision *is mailed to the parties* to file a petition for rehearing,[21] and we have held that a timely filed petition for rehearing delays the effectiveness of the order until denial of the petition.[22] Respondent in this case did not file a rehearing petition. Consequently, neither the cited rule nor the related decision of the court bears on the effective date of the order at issue here.

¶ 17 We hold today that a Bar disciplinary order, the effectiveness of which is not delayed by the filing of a petition for rehearing, becomes effective twenty (20) days after the decision is mailed to the parties, except where the court explicitly finds that immediate implementation of discipline is necessary to protect the public.[23] This period of latency is consistent with RGDP Rule 6.15. It gives a respondent the full twenty (20) days to decide whether to file a rehearing petition and act upon that decision. It also avoids the potential of trapping a lawyer who, in contemplation of filing a petition for rehearing, continues to practice law during that twenty (20) day period, but then decides at the last minute not to do so. Today's pronouncement also protects a respondent's right to due process.[24] Notice of the court's disciplinary order is a *sine qua non* for exposing a respondent to the risk of additional discipline for violating that order. The rule pronounced today gives a disciplined lawyer notice of the court's action and a meaningful opportunity to challenge it.

¶ 18 It appears in this case that the Clerk did not record on the docket sheet the date the Giger I opinion was mailed to respondent. While documentary proof of the date of mailing is preferable, its absence is not fatal where, as here, we have respondent's admission that he received the opinion by 17 November 2001. While the opinion could have been mailed any time between 13 November and 16 November for receipt on 17 November, we must give respondent the benefit of the doubt by using the very latest date on which the opinion might have been mailed, which would be the day before he received it, 16 November 2001. The twentieth day after 16 November 2001 was 6 December. Consequently, the first day on which respondent would have been in violation of the Giger I disciplinary order for practicing law while under suspension was 7 December 2001. *Inasmuch as respondent's court appearance of 6 December occurred within the latency period, he stands exonerated of the charge of violating the Giger I order by practicing law while under suspension.*

¶ 19 *2. Failure to participate in the Lawyers Helping Lawyers program.*

---

**20.** The provisions of Rule 1.193, Oklahoma Supreme Court Rules, 12 O.S.2001 Ch. 15, App. 1., state:
"In all original proceedings other than those to review a decision of the Workers' Compensation Court or to impose bar discipline, the decision of this court, unless it is stayed with or without bond, shall become effective when its opinion or order is filed with the clerk...."

**21.** *See* the provisions of Rule 6.15, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch.1, App. 1-A, which states in pertinent part:
"(c) Petitions for rehearing on behalf of the respondent or the Association shall be filed with the Clerk of the Supreme Court within twenty (20) days from the date of mailing of the action or decision of the Supreme Court."

**22.** *Bourland, supra* note 18 at ¶ 13, at 291.

**23.** The Clerk of the Supreme Court bears responsibility for giving notice to the parties of a decision in a bar disciplinary proceeding. *See* the provisions of Rule 6.15, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch.1, App. 1-A, which state:

(b) Notice of the action or decision of the Supreme Court shall be given by the Clerk to the respondent, the Professional Responsibility Tribunal, the General Counsel and the Professional Responsibility Commission.
In order to make today's pronouncement viable, the Clerk of the Oklahoma Supreme Court must from this time forward record the date an opinion in a Bar disciplinary proceeding is mailed to the respondent.

**24.** A lawyer is entitled to due process during the course of disciplinary proceedings. *State ex rel. Okl. Bar Ass'n v. Lobaugh,* 1988 OK 144, ¶ 16, 781 P.2d 806, 811.

Among the conditions of supervision imposed on respondent by Giger I was the requirement that he participate in the LHL program. The Bar alleges and the record confirms that at no time *after Giger I became effective* did respondent contact or otherwise make any effort to so participate. In his defense, respondent testified that *over a year before Giger I was pronounced,* he contacted an LHL program lawyer on at least six occasions over a period of a year and that he followed the advice he received at that time. The lawyer with whom he was in contact recalled only two or three conversations with respondent over a significantly shorter period of time and, perhaps, one face-to-face meeting. Respondent testified that having already contacted an LHL functionary the year prior to the court's order and having already followed his advice, he saw no point in obeying the court's order to further participate in that program. Moreover, in his view the LHL program is not equipped to handle depression, which he now contends is the underlaying cause of his personal problems and professional misconduct.

¶ 20 The record contains clear and convincing evidence that respondent failed to comply with the court's order to participate in the LHL program of assistance. His decision to disobey that order is particularly egregious in light of the fact that he agreed in Giger I to so participate and knew that the measure of discipline imposed in Giger I was chosen in part because of that agreement. Respondent now contends that his underlying problem is depression and that LHL assistance does not offer help for a problem of this nature. We disagree. Giger I noted that one of the LHL functions is to assist, through direct contact, lawyers impaired by substance abuse, *depression,* stress and other practice-related malaise.[25] *This charge stands proved by clear and convincing evidence.*

■■■ ¶ 21 *3. Failure to obey a district court order to participate in the Lawyers Helping Lawyers program of assistance.* On 7 September 2000 respondent entered a plea of no contest in Cleveland County District Court to four criminal charges of driving under the influence of drugs and possession of marijuana and drug paraphernalia.[26] The District Court agreed to withhold formal judgment and defer sentencing for one year on each charge and placed him on unsupervised probation conditioned in part upon his agreement to participate in the LHL program.

¶ 22 The Bar alleges that on 6 September 2000, a day before the deferred sentences expired, the Cleveland County District Attorney filed a motion to accelerate judgment and sentencing on each charge based upon respondent's failure to participate in the LHL program. While the record supports the Bar's contention that respondent did not comply with the terms of his probation, it does not support the imposition of additional discipline for noncompliance with Giger I. Respondent's obligation to participate under the terms of his Cleveland County probation endured for only the one year period of respondent's deferred judgment and sentence, i.e. between 7 September 2000 and 6 September 2001. The conditioned supervision ordered by this court was not in effect at that time and hence respondent did not violate its terms by violating the terms of his probation. *Respondent stands exonerated of this violation.*

■■■ ¶ 23 *4. Plea of nolo contendere to petty larceny in Cleveland County District Court.* Respondent entered a plea of *nolo contendere* on 8 November 2001 to a charge of petty larceny from a Norman Wal–Mart on 15 September 2001. Both the crime and the plea occurred prior to the effective date of the court's order in Giger I. Respondent's

---

25. *Giger, supra* note 2 at ¶ 4, n. 12, at 860, n. 12.

26. The four charges filed against respondent in Cleveland County were:
   (1) Actual physical control while under the influence of drugs; possession of marijuana and possession of drug paraphernalia, 12 June 1998.

   (2) Driving under the influence of drugs, 30 October 1998.
   (3) Actual physical control while under the influence of drugs, 13 February 1999.
   (4) Driving under the influence of drugs, 4 October 1999.

conduct hence did not violate the terms of the conditioned suspension and *respondent stands exonerated of this violation.*[27]

### B. The Benson Grievance

¶ 24 The Bar received a grievance on 8 August 2001 from Jimmy Travis Benson, who had retained respondent earlier that year to represent him in certain domestic matters. According to Mr. Benson, respondent never followed through on assurances that he would initiate legal action, repeatedly promised and then failed to obtain visitation for him with his daughter, did not return phone calls, was late to or failed to appear at numerous court hearings, gave Mr. Benson the impression he had a drug problem, and after he was discharged, refused to return in excess of $2,000.00 in legal fees which Mr. Benson had paid him.

¶ 25 Respondent provided a detailed reply to the grievance, denying any misconduct and asserting that the grievance was motivated by the fact that Mr. Benson did not want to pay additional legal fees owed.

¶ 26 The Bar filed a formal complaint in the Benson matter on 28 June 2002. Giger did not file a response to the formal complaint, but reiterated at the 16 January 2003 hearing that he had provided adequate legal representation to Mr. Benson in every respect. Mr. Benson was not present at the hearing and no testimony was given on the Benson grievance other than that of respondent. Bar counsel admitted that without the testimony of Mr. Benson, the Bar was unable to prove the charges by clear and convincing evidence. We agree. *Respondent stands exonerated of this violation.*

### C. Respondent's History of Erratic Cooperation with the Bar and with this Court

¶ 27 Respondent's lack of cooperation with the Bar was evident in Giger I and served as one of the grounds for imposing discipline in that proceeding. Respondent's cooperation with the Bar remains at an unacceptable level. Knowing that the Bar was attempting to communicate with him, respondent nevertheless collected mail sent to his Bar roster address only on an irregular basis, at times allowing several weeks' volume of mail to accumulate. He provided the Bar with his mother-in-law's address, but when she went out of town for three weeks during these proceedings, he did nothing to obtain mail addressed to him at her address. When asked at one of the hearings if he regularly responds to mail from the Bar, he answered evasively, "I respond to all the mail I get." A private process server also testified about the difficulty he had in serving respondent personally.

¶ 28 Respondent's failure to cooperate is also evidenced by his handling of a drug abuse assessment he promised to furnish the trial panel within five days of the 21 August 2002 hearing. At that hearing respondent informed the trial panel that he had undergone a substance abuse evaluation in April of 2000 at the suggestion of the lawyer he had contacted from the LHL program. Respondent testified that the assessment, conducted at the Oaks Behavioral Health Center in Eufaula, Oklahoma, concluded he did not have a "classic substance abuse problem" or "any particular problem."

¶ 29 In a letter dated 28 August 2002 received by the Bar on 3 September 2002, respondent informed the presiding master that he had not yet been able to obtain a copy of the evaluation from the Oaks because it had been placed in the archive and was not immediately accessible to the staff. He expressed hope that he would be able to obtain a copy within a few days. It was never produced.

¶ 30 At the 16 January 2003 hearing respondent announced that he had found in his file at home a letter dated 1 June 2000 from the Oaks discussing certain drug-related tests administered to him. This letter was offered as an exhibit. He never produced any other paperwork generated by the Oaks evaluating him for substance abuse. The 1

---

27. Whether the petty larceny offense or respondent's failure to comply with the terms of his Cleveland County probation might warrant independent disciplinary sanctions is not before us in this proceeding, in which additional discipline is sought to be imposed for respondent's alleged violation of the court's Giger I opinion.

June letter shed no light on his condition in 2000 let alone in late 2001 and 2002 when he chose to disobey the Giger I opinion.[28]

¶ 31 Respondent has failed in a number of other ways to comply with his obligations to the Bar and to this court. He has not paid Bar dues during his suspension nor has he fulfilled his CLE requirements. He has never paid the court-ordered costs of Giger I. He testified that he would like to meet all of these obligations, but due to his depressed mental state and the suspension he has been unable to work until recently and lacks sufficient income. He has never informed the court of his financial plight nor has he ever asked for an extension of time to meet his obligations.

¶ 32 Finally, respondent's testimony shows that he has not fully accepted responsibility for his predicament. He accuses the Bar of persecuting him and of maneuvering to prevent him from ever returning to the practice of law.

## IV

### RESPONDENT'S MISCONDUCT WARRANTS A SUSPENSION OF HIS LICENSE TO PRACTICE LAW FOR TWO YEARS AND ONE DAY TOGETHER WITH THE PAYMENT OF THE COSTS OF THIS PROCEEDING

¶ 33 A license to practice law is not conferred for the benefit of the licensee, but for that of the public. The disciplinary process, including the imposition of a disciplinary sanction, is designed not to punish the delinquent lawyer, but to safeguard the interest of the public, the judiciary, and the legal profession.[29] Disciplinary sanctions serve not only to deter the offending lawyer from committing similar acts in the future, but also operate to put others on notice that departures from ethical norms will not be tolerated.[30]

¶ 34 The Bar's motion to impose additional discipline on respondent alleges four violations of the court's order in Giger I. From our *de novo* review of the record, we conclude that the Bar has established only a single violation—failure to participate in the LHL program. The fact that only a single violation has been proved does not mean that discipline is not warranted or that leniency is to be favored. We take a particularly dim view of disobedience to court orders. The integrity of the judicial system demands that lawyers, who are officers of the court, respect its authority. We cannot allow a lawyer to defy a disciplinary order without consequence. Public confidence in the judicial system demands that the court hold lawyers accountable for disobedience to its orders.

¶ 35 Respondent's noncompliance with the order to participate in the LHL program is a serious breach of the fundamental ethical norm of respect for the court's authority, but it is even more than that. Respondent's obligation to participate was not just part of the court's order in Giger I. Even before the court incorporated that requirement into the order, respondent had entered into an agreement with the Bar to accept LHL services. The court viewed respondent's willingness to seek that organization's assistance as evidence that he had finally come to recognize he had serious problems for which he needed help. Respondent's agreement to participate hence influenced the court's decision in Giger I not to impose a more severe disciplinary measure.

¶ 36 That respondent thereafter failed to participate in the LHL program casts doubt upon his candor with the court in the earlier proceeding. It now appears that at the very time he agreed to participate respondent had already concluded that there was nothing to

---

28. The letter-writer appeared to be under the impression that respondent had only a single drug-related charge against him. In addition, the tests administered to respondent were identified only by acronym and no explanation was provided of what the tests assessed.

29. *State ex rel. Okl. Bar Ass'n v. Smith*, 1980 OK 126, ¶ 21, 615 P.2d 1014, 1018; *State ex rel. Okl. Bar Ass'n v. Lowe*, 1982 OK 20, ¶ 19, 640 P.2d 1361, 1363.

30. *State ex rel. Okl. Bar Ass'n v. Cummings*, 1993 OK 127, ¶ 29, 863 P.2d 1164, 1174; *State ex rel. Okl. Bar Ass'n v. Hall*, 1977 OK 117, ¶ 12, 567 P.2d 975, 978.

be gained from that participation. It calls into question the sincerity of his then profession that he understood he had problems that were not amenable to self-help treatment measures alone. Moreover, respondent's failure to participate did more than just deprive *him* of the benefit of that organization's support. In Giger I, we said,

"The cumulative impact of respondent's transgressions requires not only that he be suspended for more than a token period of time for his past misconduct, *but also that his health—physical, mental, and psychological—be regularly assessed for continued fitness to practice law.*"[31] (emphasis added)

The court in Giger I wanted the assurance that respondent is fit to practice law that would have been provided by ·a successful period of LHL supervision. His failure to perform this obligation has removed that avenue of assurance.

■■■ ¶ 37 In addition to his failure to participate in the LHL program, respondent's lack of cooperation with the Bar must also be considered in assessing additional discipline in this case. Respondent's disinclination to maintain good communication with the Bar, a troubling aspect of respondent's misconduct in Giger I, is again evident in the instant proceeding where respondent made only dilatory efforts to obtain his mail and was uncooperative in receiving or accepting the service of process. We also note that respondent expressed the belief that the Bar is persecuting him. *A lawyer's lack of acceptance of responsibility for his professional difficulties, attributing them instead to the malignant designs of others, is a warning sign that the court must heed in assessing discipline.*

■■■ ¶ 38 Respondent testified that he suffers from depression, but he did not request that the court take this psychological impairment into account in assessing discipline. If respondent does indeed suffer from depression, he has failed to establish that fact for the record. Not only did respondent

fail in this proceeding to provide medical evidence that he suffers from depression, but we have reviewed the record in Giger I and found no reference to depression as a cause of his misconduct there. A letter from respondent's physician admitted into evidence in Giger I identified several physical ailments plaguing respondent. The physician also related in the letter that respondent had suffered several stressful personal losses, but opined that these were now under control so that respondent "is able to function at a high level." The doctor's letter did not mention that he had ever diagnosed respondent as suffering from depression.

■■■ ¶ 39 Emotional or psychological disability may serve to reduce a legal practitioner's ethical culpability, but does not immunize that person from imposition of disciplinary measures that are necessary to protect the public.[32] When a mental disorder is tendered as a mitigation factor for the assessment of a lawyer's culpability, there must be a causal relationship between the medical condition and the professional misconduct.[33] Not only did respondent fail to provide medical substantiation that he suffers from depression, but he also failed to establish a causal link between this perceived mental condition and the misconduct for which additional discipline is sought. *The court can and must protect the public from a lawyer who suffers from undefined psychological problems that call into serious question his continued fitness to practice law.*

¶ 40 Respondent's misconduct justifies disbarment in this case, but we decline to impose the ultimate disciplinary measure where, as here, respondent's misconduct has not caused any injury to a client, to the public, or to the legal profession beyond that which naturally flows from his defiance of the court's order. Instead, we suspend respondent for two years and one day so that he will not be able to resume the practice of law without first demonstrating his fitness to act

---

**31.** *Giger, supra* note 2 at ¶ 23, at 865.

**32.** *State ex rel. Okl. Bar Ass'n v. Schraeder,* 2002 OK 51, ¶ 28, 51 P.3d 570, 580.

**33.** *Id.* at ¶ 28, at 579–80.

as a lawyer.[34] At the expiration of the suspension pronounced today, respondent will remain suspended until he has met all outstanding obligations to the Bar and the court regarding Bar dues, CLE, and the payment of court-ordered costs. Respondent has not seen fit to seek the help and support he needs to overcome his problems despite the court's clear direction in Giger I to get such help. It is our fervent hope that a suspension from which he cannot return to the practice of law without pursuing the readmission procedures for disbarred lawyers will convince him to do so.

¶ 41 The Bar submitted an application to assess against respondent the costs of this proceeding in the sum of $2,010.06.[35] Respondent has not challenged the Bar's application. Upon examination of the itemized costs and the copies of bills submitted by the Bar, we order respondent to pay the costs of this proceeding in the amount of $1,580.42 within ninety (90) days of the date this opinion becomes final.[36]

¶ 42 **RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR TWO YEARS AND ONE DAY IN SCBD No. 4529 AND IS DIRECTED TO PAY THE COSTS OF THAT PROCEEDING IN THE AMOUNT OF $1,580.42, WHICH**

**SHALL BE DUE NOT LATER THAN NINETY (90) DAYS AFTER THIS OPINION BECOMES FINAL; RESPONDENT STANDS EXONERATED OF PROFESSIONAL MISCONDUCT IN SCBD No. 4734.**

¶ 43 WATT, C.J., and HODGES, LAVENDER, KAUGER, BOUDREAU and WINCHESTER, JJ., concur.

¶ 44 HARGRAVE, J., concurs in result.

¶ 45 SUMMERS, J., concurs in part and dissents in part.

---

34. A suspension from the practice of law for two years and one day is tantamount to disbarment. In order to be reinstated, a lawyer suspended for that period of time must follow the readmission procedure for disbarred lawyers. *See* the provisions of Rule 11.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App.1–A. That procedure, set forth in the provisions of Rule 11.4, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A., entails the following:

"An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse

to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules." We are persuaded that this respondent must be held to the strict standard set forth in Rule 11.4 before being allowed to represent the public in the future.

35. The provisions of Rule 6.16, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch. 1, App. 1–A, authorize assessing the costs of a disciplinary proceeding against a disciplined lawyer in cases where discipline results.

36. We arrived at this sum by deducting from the Bar's request those costs that appear from the material provided in the Bar's application to be entirely or primarily attributable to the Benson complaint. Because discipline did not result from that proceeding, its costs may not be taxed against respondent. *See id.,* Rule 6.16, Rules Governing Disciplinary Proceedings.