STATE ex rel. OKLAHOMA BAR ASSOCIATION v. LANCE
2023 OK 98
Case Number: SCBD-7183 (Cons. w/ SCBD-7214)
Decided: 10/10/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 98, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
LANCE T. LANCE, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE

¶0 Complainant, the State of Oklahoma ex rel. Oklahoma Bar Association (OBA), brought disciplinary proceedings against Respondent based on (a) convictions in four separate criminal cases; (b) one judicial grievance and two client grievances filed against Respondent; (c) the unauthorized practice of law; and (d) other professional misconduct. For the reasons discussed below, we find clear and convincing evidence that Respondent's conduct requires disbarment. We order Respondent to pay costs of $9,252.87 within ninety days from the date of this Opinion.

RESPONDENT DISBARRED; APPLICATION FOR COSTS GRANTED

Katherine M. Ogden, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Gordon R. Melson, Ada, Oklahoma, for Respondent; Respondent, pro se.

KUEHN, J.:

¶1 This matter is before the Court for imposition of final discipline under combined Rules 6 and 7.2, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2023, Ch. 1, App. 1--A. Respondent Lance Timothy Lance was licensed to practice law in Oklahoma in 2000. A series of criminal and professional misconduct incidents involving Respondent began in January 2020 and culminated with his interim suspension in January 2022.

Murray County Criminal Cases

On October 28, 2021, Respondent pled no contest in four separate criminal cases in Murray County. In CM-2020-56, Driving While Under the Influence of Intoxicants, he received a one-year sentence, with all but 90 days suspended, and a fine. In CM-2020-192, Violation of Protective Order, he received five years in prison, all deferred except for 90 days in the Murray County Jail, and a fine. He was given the same sentence in CM-2021-206 (Count I) Possession of Methamphetamine, and (Count II) Unlawful possession of Drug Paraphernalia. He also received that sentence in CM-2021-224 (Count I) Possession of Methamphetamine, (Count II) Unlawful Possession of Paraphernalia, and (Count III) Obstructing an Officer.

¶2 On December 10, 2021, the OBA filed a Notice of Judgments and Sentences pursuant to Rule 7.2. On January 10, 2022, this Court imposed an interim suspension and directed Respondent to show cause, if any, why it should be set aside. Respondent and the OBA responded, and on February 28, 2022, this Court denied Respondent's motion to lift the interim suspension. The matter was referred to the Professional Responsibility Tribunal for a hearing for a recommendation of final discipline.

Professional Misconduct Complaint

¶3 On February 8, 2022, at the direction of the PRT, the OBA filed a formal complaint pursuant to Rule 6 against Respondent in this Court, alleging five counts of professional misconduct. The allegations involved failure to appear on clients' behalf, failure to communicate with clients, failure to complete work, failure to complete continuing legal education requirements, and the unauthorized practice of law while under suspension. Rules 1.3, 1.4, 1.15, 5.5, and 8.4(d) of the Oklahoma Rules of Professional Conduct, 5 O.S. ch. 15 O.S. ch. 1

STANDARD OF REVIEW

¶4 This Court has exclusive original jurisdiction over bar disciplinary proceedings. State of Okla. ex rel. Okla. Bar Ass'n v. McBride, 2021 OK 61500 P.3d 619State ex rel. Okla. Bar Ass'n v. Silvernail, 2022 OK 68522 P.3d 464de novo. State ex rel. Okla. Bar Ass'n v. Conrady, 2012 OK 29275 P.3d 133State ex rel. Okla. Bar Ass'n v. Willis, 2022 OK 15Conrady, 2012 OK 29

CRIMINAL CHARGES (RULE 7)

¶5 Rule 7.1: A lawyer who has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal.

Rules Governing Disciplinary Proceedings, 5 O.S. ch. 1 app. 1-A.

¶6 Rule 7 applies where a lawyer has been convicted of a crime. Certified copies of the conviction, including guilty pleas, are conclusive evidence of commission of the crime and provide a sufficient basis for discipline. Rule 7.2, Rules Governing Disciplinary Proceedings, 5 O.S. ch. 1 app. 1-A. Rule 7 provides for summary disciplinary proceedings, focused on whether the conviction demonstrates the lawyer's unfitness to practice, and what discipline should be imposed. McBride, 2021 OK 615 O.S. ch. 1State ex rel. Okla. Bar Ass'n v. Armstrong, 1990 OK 9791 P.2d 8155 O.S. ch. 1

¶7 Respondent claims, and witnesses agree, that he practiced law for more than twenty years without incident. However, by 2019, Respondent was the subject of several interactions with police, including welfare checks, domestic and property disputes, and traffic stops. Most witnesses who knew Respondent testified to his deterioration and believed it was due at least in part to his drug use. In late 2019, Respondent's assistant prepared and delivered case paperwork to Respondent's house because he stopped coming to his office; he also asked her to bring a gun to keep in the office. On one occasion Associate District Judge Duck contacted the assistant after Respondent missed a court appearance and had her bring that paperwork and all Respondent's deprived child cases to him. Eventually, Judge Duck told her to close Respondent's law office.

CM-2020-56 (Driving While Under the Influence of Intoxicants)

¶8 On February 29, 2020, Respondent was stopped for crossing double yellow lines, expired tag, and apparently arguing with a passenger. The officer observed that Respondent had erratic behavior, was agitated and appeared paranoid; the officer suspected Respondent was under the influence of an intoxicant. Respondent first suggested to the traffic officer that "there are certain people that you do not arrest", then failed field sobriety tests.

CM-2020-192 (Violating a Protective Order)

¶9 Respondent's former partner, G.S., obtained a permanent protective order directing Respondent to (a) stay away from G.S. and her children, and (b) to surrender his firearms and dangerous weapons. While out on bond for the DUI, Respondent tried to communicate with G.S. and was charged with a violation of permanent protective order on June 26, 2020. He failed to appear, forfeited his bond, was arrested, and was released on July 8 to undergo inpatient treatment for addiction. After treatment concluded, he was released upon a payment of $25,000. The protective order was dismissed during the pendency of this case, on April 8, 2022.

CM-2021-206 (Possession of Methamphetamine and Paraphernalia)

¶10 On July 21, 2021, during a traffic stop, Respondent's passenger had an active warrant, and drugs on his person. Ultimately this led to a search of Respondent's car. The officer found loose pills as well as glass pipes and a baggie with methamphetamine residue in Respondent's console and his bag. He was charged with possession of methamphetamine and unlawful possession of paraphernalia, posted bond, and was released.

CM-2021-224 (Possession of Methamphetamine, Possession of Paraphernalia, Obstructing an Officer)

¶11 On July 28, 2021, Sulphur police were called to Respondent's home for a welfare check. Events resulting from that check are discussed later in this Opinion, in connection with a Rule 6 allegation. However, officers eventually executed a search warrant and entered the house by breaking a window. The next day, on July 29, Respondent's mother asked his friend Foltz to check on Respondent. Foltz went to the house but could not reach Respondent. Foltz entered through the window police had broken the previous day, and Respondent repeatedly hit him with a baseball bat. Foltz went to the hospital and Respondent called police to report a burglary in progress.

¶12 Respondent pled guilty in each misdemeanor case. Respondent received a cumulative sentence of 90 days in jail and five years in prison deferred, plus one year suspended, all running concurrently to one another, along with fines.

Discussion

¶13 Several of Respondent's convictions, for driving under the influence, methamphetamine possession, and possession of paraphernalia, arguably stem from his admitted methamphetamine addiction. However, his conviction in CM-2020-192, for violation of a protective order, was based on his violation of a court order. This and his subsequent crimes were committed while he was out on bond for the February 2020 DUI, and each successive case. His conviction for obstruction of justice in CM-2021-224 involves deceit. This, and the violation of the court order, are particularly troubling. As we recently discussed, we have "repeatedly disbarred attorneys following convictions for crimes involving dishonest conduct." State ex rel. Okla. Bar Ass'n v. Pistotnik, 2020 OK 93477 P.3d 376

¶14 Taken together, these convictions form a pattern of repeated criminal offenses and show that Respondent is unfit to practice law. State ex rel. Okla. Bar Ass'n v. Hart, 2014 OK 96339 P.3d 895Silvernail, 2022 OK 68See, e.g., State ex rel. Okla. Bar Ass'n v. Bernhardt, 2014 OK 20323 P.3d 222Conrady, 2012 OK 29State ex rel. Okla. Bar Ass'n v. Garrett, 2005 OK 91127 P.3d 600

PROFESSIONAL MISCONDUCT (RULE 6)

¶15 Rule 6 sets forth the process by which the OBA processes grievances against attorneys, conducts investigation, and presents the results and recommendations to this Court for disciplinary action. Based on the evidence presented at the hearing, the PRT found Respondent violated Rules 1.3, 1.4, 1.15, 5.5, and 8.4(d) of the Oklahoma Rules of Professional Conduct, 5 O.S. ch. 15 O.S. ch. 1

Count I -- Judge Duck Grievance

¶16 From late 2020 through early 2021, Associate District Judge Duck of Murray County District Court observed that Respondent failed to appear for court dates in five separate cases, without notice to either the court or his clients.

Count II -- McElroy Grievance

¶17 McElroy paid Respondent $2250 in September 2020, to prevent her son from taking her home. Her nephew, Currie, had her power of attorney and worked with her. Neither McElroy nor Currie were able to contact Respondent about the case. At his office, they found other clients' notes taped to the door. The two went to the courthouse in December 2020 and discovered a hearing was set for February 2021. They could not reach Respondent, who failed to appear for the hearing. He was removed from the case, and McElroy had to hire new counsel. Respondent did not provide an accounting of funds until required to do so by the OBA immediately before his disciplinary hearing; McElroy disputed its accuracy during the hearing, insisting that Respondent had not done the work she paid him for; she rejected Respondent's suggestion that she had also asked him to do other estate work at the same time. Respondent attempted to deflect responsibility by suggesting that McElroy had been ill and not thinking clearly when she hired him. McElroy flatly denied the allegation. Respondent's repeated failures to communicate or meet with the client, and failure to appear to represent her in court, violated Rules 1.3 and 1.4.

Count III -- Murray Grievance

¶18 James Murray, who was in prison in Texas, hired Respondent in April 2021 to assist him with requirements necessary for release under the prison's pre-release program -- creating an outside contact and getting a place to live. Murray went to Respondent because Murray's mother had recently died, and he was friends with Respondent's family. Murray sent Respondent a cashier's check from his mother's estate, birth certificate, state and tribal identification, and his Social Security card for safekeeping. Respondent rented an apartment for Murray. However, before release, Murray's probation officer had to verify the housing requirement. The officer could not reach Respondent, who failed to return phone calls or messages, and Murray's release was significantly delayed. Murray tried to reach Respondent for an explanation of the denial by phone and email, and had others call on his behalf, but never heard from Respondent. Murray also demanded his property back, but Respondent did not return the property until after this grievance was filed. At the hearing, Murray was shown a series of emails and letters in which Respondent suggested that Murray withdraw the grievance, but Murray did not want to do that. Respondent's failure to communicate -- which ultimately caused Murray to spend several extra months in prison -- and failure to timely return Murray's money and identification violated Rules 1.3, 1.4, and 1.15.

Count IV -- General Counsel Grievance (Unauthorized Practice of Law)

¶19 Respondent failed to complete the 2020 Mandatory Continuing Legal Education (MCLE) requirements and was so notified in January 2021. On March 15, 2021, the OBA MCLE administrator sent Respondent a certified show cause letter, stating that he was not in compliance with MCLE requirements and, if he did not remedy this by May 14, 2021, his license to practice law would be suspended. The OBA sent Respondent emails to this effect in February, March, April, and May 2021, and made several unsuccessful attempts to reach him by phone. Respondent did not make up his deficient MCLE requirements, and this Court suspended his law license on June 7, 2021.

¶20 On June 9, 2021, Respondent appeared in Murray County District Court and executed a waiver on behalf of a client. He testified at his PRT hearing that he knew he hadn't completed his MCLE credits but had forgotten about it when he was in court. He admitted he should not have represented the client; however, he argued that he was neither her attorney of record nor formally entered the case.

¶21 On September 10, 2021, Respondent was in jail after his arrest in CM-2021-224 (for drug possession, obstructing an officer, and assault and battery), and his license was still suspended for failure to comply with MCLE requirements. From jail, he filed a motion for continuance in Murray County District Court on behalf of a client, signing the motion with his OBA number and the notation "attorney for ?" (? is often used for "defendant"). The district court overruled the motion, noting that Respondent's license was suspended, and he could not represent the client.

¶22 On October 12, 2021, a handwritten motion to dismiss was filed in Respondent's case, CM-2020-192 (violation of protective order), signed by Respondent with his OBA number and the notation "Attorney for Defendant". Respondent's license was still suspended at this time. Respondent admitted signing the document but said he didn't remember it because he had filed several motions from jail in the same period. In each of these incidents Respondent engaged in the unauthorized practice of law and violated Rule 5.5.

Count V: The Spring Gun/Personal Behavior

¶23 On July 21, 2021, Respondent was arrested for possession of methamphetamine and paraphernalia (CM-2021-206, above) and bonded out. On July 28, Judge Duck called police to perform a welfare check on Respondent. In response, officers Conyers and Calabrese went to Respondent's house, as they had done in the past to perform other welfare checks. They found two sheriff's deputies, Flowers and Eddy, already there. Respondent's friend Foltz arrived, and officers asked him to wait for them down the road, away from the house. Most of the doors were barricaded. From previous visits, officers knew there was an interior garage door that led into the house. They went into the garage and saw a string hanging from the doorknob that led up, over the door, and back into the house. Deputies touched the string but did not open the door. Flowers talked to Foltz, asking where Respondent was and why there was a string around the door. Foltz became upset and said he'd forgotten, but the string was a booby trap, attached to the trigger of a shotgun inside the house that was pointed at the doorway. Officers secured the house, left, and returned with a search warrant. Afraid that any nonbarricaded doors would have similar traps, they broke the front window and found the loaded shotgun, set up to fire at anyone coming through the interior garage door. Under the terms of the protective order then in effect, Respondent had been ordered to give up any guns he possessed.

¶24 Respondent argues that because this incident did not result in arrest or criminal charges it is irrelevant to both the Bar's claims of professional misconduct, and to his fitness or ability to practice law. Respondent misunderstands the scope of disciplinary proceedings. We turn to Rule 1.3:

"The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S. ch. 1 app. 1-A. Our de novo review of the record encompasses "all relevant facts." State ex rel. Okla. Bar Ass'n v. Littlefield, 2023 OK 53529 P.3d 185Id. at ¶ 7, 529 P.3d at 188.

¶25 Evidence showed that at the time of the incident Respondent was mentally unstable and had been habitually using methamphetamine, was paranoid, had several pending criminal charges, and was prohibited from owning firearms. Respondent knew that officers had made frequent welfare checks at his house in the previous months, and that they were aware of the interior garage door. Evidence showed Respondent owned and lived in the home alone at the time of this incident. Respondent left his house locked and barricaded, with a loaded shotgun set to discharge when an unblocked interior door was opened -- potentially injuring any person who opened the door, and specifically endangering the officers who were at the house on official business. At best, this casts significant doubt on Respondent's good judgment; at worst, it shows a catastrophic failure of his ability to conform to social norms. Either way, this incident brings disrepute to the legal profession and reflect adversely on his fitness to practice law. Bar disciplinary proceedings are wholly separate from any criminal investigation. Whether Respondent was subjected to criminal charges is not our concern. We consider whether this conduct warrants discipline to protect the public and preserve the integrity of the profession. Silvernail, 2022 OK 685 O.S. ch. 1

EVIDENCE IN AGGRAVATION

¶26 The OBA directs us to several episodes described in the record but not charged separately. Officer Calabrese testified that he was often called to Respondent's house and stated that during one interaction Respondent had a syringe and methamphetamine. On cross-examination, Respondent elicited from Officer Newport that she had stopped him a few days before his February 2020 DUI arrest, had a friend take the wheel because Respondent was too impaired to drive, but neither arrested Respondent nor reported the stop. Respondent himself testified, in what he described as aggravation, that in a different incident Officer Newsome stopped him in March of 2021, and he did not have a valid driver's license.

Modification of deferred sentences

¶27 On March 11, 2022, after he had been suspended from the practice of law by this Court based on the Rule 7 allegations, Respondent filed a motion in Murray County District Court to have his deferred sentences reduced in each of his criminal cases. He specifically stated that he wished to modify "the charges he pled, as well as the deferral period, for employment purposes with the Oklahoma Bar Association." He complained that the charges, number and type of crimes, and the length of the deferred sentences all affected his "ability to gain employment as an attorney and to have his license reinstated." He stated in the Motion that the OBA sought to suspend his law license for two years based on the "current charges", that the OBA indicated it viewed "the obstruction charges" as involving deceit, and that the number of charges showed a pattern of offenses which indicated an indifference to his legal obligations.

¶28 An assistant district attorney agreed, and on June 14, 2022, the trial court modified Respondent's five-year deferred sentences to one-year deferred sentences in CM-2020-192, CM-2021-206, and Counts I and II of CM-2021-224. These modifications were based on Title 22 Section 982a, which authorizes a trial court to modify a sentence and impose a different sentence at any time within sixty months after the sentence is initially imposed; however, the trial court "shall not impose a deferred sentence." 22 O.S. § 982a

¶29 After his interim suspension, to avoid the professional consequences of his convictions -- suspension and possible imposition of discipline -- Respondent manipulated the system. He clearly stated this intent in his Motion to Modify Sentences. Because the deferred sentences in CM-2020-192, CM-2021-206, and CM-2021-224 were modified to one year, Respondent moved to dismiss those cases after that year expired, on August 22, 2022. The cases were dismissed on December 21, 2022, to apply retroactively.

¶30 In his Brief in Chief to this Court, in anticipation of these dismissals, Respondent argued that, after the cases were dismissed, he would petition for their expungement and ask that they be sealed, so they would no longer be of public record and reflect negatively on him or the Bar. And on December 28, 2022, Respondent filed in this Court a pleading titled Suggestion to the Court Regarding Completion of Deferred Sentence. In it he notes that the three cases were dismissed. He implies that, because his criminal cases were dismissed, this should affect the seriousness with which this Court views his conduct and the decision on imposition of discipline.State ex rel. Okla. Bar Ass'n v. Shanbour, 2008 OK 62195 P.3d 31

EVIDENCE IN MITIGATION

¶31 Respondent testified on his own behalf. He freely admitted that at the time he committed his crimes he was addicted to methamphetamine. The record shows Respondent has battled this addiction since at least 2009. While Respondent's license was suspended, he took a continuing education class in which he learned for the first time that substance abuse and drug addiction might be a self-medication strategy for people with underlying mental health issues. At that point he concluded that his longstanding methamphetamine addiction was his attempt to self-medicate his own mental health issues. After consulting his doctor, he realized that, once he was prescribed appropriate medications, he no longer wanted to use methamphetamine.

¶32 Respondent's family doctor, Dr. Tatom, confirmed that he examined Respondent during the year immediately preceding his PRT hearing and felt he had bipolar disorder. Tatom said that in the fall of 2021 he prescribed medication commonly used to treat that condition, and by his observation the medication was working. Previously, Respondent had been diagnosed with and treated for depression. Tatom testified that when he advised Respondent to consult a psychiatrist about appropriate medication for bipolar disorder, Respondent replied that he felt good at the time and was reluctant to change medications. However, during the time in which the PRT hearing occurred Respondent consulted a psychiatrist.

¶33 From July through August of 2020, after his first DUI arrest but before he committed the last two charged offenses, Respondent completed an inpatient methamphetamine treatment program. However, Respondent's failures to appear outlined in the Rule 6 Grievance Count I, as well as the conduct in Counts II, III, IV, and V, and Respondent's arrests for methamphetamine possession, assault, and obstructing an officer in CM-2021-206 and in CM-2021-224, all occurred after this inpatient treatment. Respondent participated in individual counseling for several months in 2020 after release from the treatment plan, again before the conduct which forms the basis for the charges against him. Respondent's driver's license was reinstated in April 2021, before the crimes which formed the basis for his last two convictions were committed. Respondent admitted he had a relapse between August of 2020 and fall 2021, during which time the conduct supporting most of these grievances occurred.

¶34 Respondent presented meeting logs supporting his claim that he regularly attended support group meetings for substance abusers.

¶35 Respondent had other difficulties. In 2018 he had back surgery, to fix injuries resulting from a car accident. The accident itself was traumatic and there was significant recovery time from the surgery. In 2019, at Thanksgiving, Respondent and his partner separated. He became severely depressed and believed this began the cycle of drug abuse that led to his convictions and the grievances against him. Overall, describing his condition during the time the crimes were committed, he said that given his mental health, his addiction, and personal circumstances, he "had essentially a nervous breakdown."

¶36 Respondent provided two other witnesses. A former client, Hunter, testified that he had hired Respondent in several cases, was satisfied with his work, and looked forward to hiring him again. Hunter testified that he was aware Respondent had some health issues during 2021-2022 but did not know he was addicted to methamphetamine. Hunter was also Respondent's landlord and testified that he talked to Respondent about Respondent's assistant when Respondent was behind on her compensation. Respondent also called Lancaster, who sponsored Respondent at a Narcotics Anonymous group in 2008 or 2009 for methamphetamine addiction. Respondent allowed the group to meet in his law office rent-free. Lancaster was aware that Respondent had relapsed more than once during his recovery, but had spoken with him in the nine months preceding the hearing and felt Respondent was doing well. Lancaster and his daughter, separately, were also Respondent's clients before 2011, when Lancaster moved to Texas.

¶37 Respondent also submitted more than seventy letters from former clients. He prepared this as a single form letter and mailed it to clients, asking them to fill in personal information and submit it on his behalf. He admitted that, though he worked with his uncle, an attorney, to ensure his clients' cases were transferred to other attorneys, he neither sent the clients certified letters announcing his suspension nor filed a notice with the Supreme Court that he had done so, and was thus not in compliance with Rule 9.1, Rules Governing Disciplinary Proceedings, 5 O.S. ch. 1 app. 1-A.

¶38 Respondent claimed that the consequences of his criminal convictions should be considered in mitigation. He argued that the 92 days he spent in jail were themselves mitigation of his misconduct. He argued that his conviction for driving under the influence in CM-2020-52 was two years old and thus dated, and the fact that he received a suspended sentence in that case was mitigating. He noted that the State had reinstated his driver's license. And he argued that his deferred sentences were about to expire, and he expected the convictions to be expunged. He argued that the criminal fines and costs were mitigating factors because they were a financial hardship to him. He noted that several witnesses stated they thought he could be rehabilitated and successfully practice again, and he apologized for his actions.

DISCIPLINE

¶39 In imposing discipline, we consider prior decisions which involve similar misconduct, but as each situation involves different facts and circumstances, we proceed case by case. Pistotnik, 2020 OK 93Conrady, 2012 OK 29Silvernail, 2022 OK 68State ex rel. Okla. Bar Ass'n v. Friesen, 2016 OK 109384 P.3d 1129

¶40 In the Rule 6 matter, we have found Respondent violated Rules 1.3, 1.4, 1.15, 5.5, and 8.4(d) of the Oklahoma Rules of Professional Conduct, 5 O.S. ch. 15 O.S. ch. 1

¶41 We have also found Respondent violated Rule 7. He has four separate convictions with seven separate counts, including driving under the influence, possession of methamphetamine and paraphernalia, violation of a protective order, and obstructing an officer. We found that the latter two crimes reflect on Respondent's honesty, trustworthiness, and fitness to practice law. And the convictions as a whole show a pattern of criminal conduct which shows Respondent is unfit to practice.

¶42 We may consider emotional, psychological, or physical disabilities in mitigation; however, they will not wholly insulate an attorney from disciplinary measures. State ex rel. Okla. Bar Ass'n v. Nichols, 2021 OK 28488 P.3d 734State ex rel. Okla. Bar. Ass'n v. Giger, 2003 OK 6172 P.3d 27Giger. Giger had been previously disciplined for misconduct resulting from drug abuse, was allowed to practice under conditioned supervision, failed to meet the conditions, and further disciplinary proceedings were brought. Although the OBA brought several allegations, this Court found that only one violation was established -- failure to participate in the Lawyers Helping Lawyers program as ordered. It was this single violation, combined with Giger's history of lack of cooperation in disciplinary proceedings, that resulted in a suspension of two years and a day.

¶43 The facts here are distinctly different. In fact, Giger itself supports disbarment under these circumstances. "Respondent's misconduct justifies disbarment in this case, but we decline to impose the ultimate disciplinary measure where, as here, respondent's misconduct has not caused any injury to a client, to the public, or to the legal profession beyond that which naturally flows from his defiance of the court's order." Giger, 2003 OK 61Giger, Respondent's misconduct justified disbarment.

¶44 Respondent has had no prior discipline. He was cooperative throughout the proceedings. However, throughout the PRT proceedings, and in filings before this Court, Respondent attempted to minimize the seriousness of his conduct. Through his questions to witnesses and his own testimony in the PRT hearing, he suggested that the officers involved in his arrests had personal reasons motivating their actions and testimony against him -- bias, animus, conflicts of interest, and vague suggestions that they were protecting other persons who had wronged Respondent.

¶45 Respondent emphasizes his actions supporting his recovery from methamphetamine addiction and his treatment for mental illness. We do not minimize those achievements. However, upon closer view, they don't paint quite the picture Respondent suggests. We give Respondent credit for completing one inpatient treatment for addiction. However, after he relapsed and committed several crimes and acts of professional misconduct, he did not return to inpatient treatment. Nor, according to his exhibits and testimony, did he continue regular individual counseling after his relapse in late 2020. Compelled by a pending court case and these proceedings, Respondent submitted regular clean drug tests and attendance sheets for substance abuse support group meetings. But by the time of the PRT hearing, he attended meetings only every ten days to two weeks and did not have a personal sponsor. He didn't start attending meetings of Lawyers Helping Lawyers until after testimony had closed in the PRT hearing. In testimony and argument, Respondent indicated that he feels much better since he began taking medication for his bipolar disorder, and believes he is now ready to resume the practice of law. Respondent is clearly sincere in his intention to live a sober life. However, when the OBA relied on Giger to recommend that Respondent receive a sentence of two years and a day, it commented, "Complainant does not believe Respondent [Lance] has sufficient safeguards in place to protect him from relapse...." We agree.

¶46 We turn to the factors involved in assessing appropriate discipline. First, Respondent violated his duties to his clients and the courts to give representation with reasonable diligence and promptness (Rule 1.3); to maintain reasonable communications (Rule 1.4); and to hold the property of clients and third parties separately for safekeeping (Rule 1.15). Respondent engaged in the unauthorized practice of law (Rule 5.5). In violating a court order, obstructing an officer, and setting a trap with a firearm, Respondent engaged in conduct prejudicial to the administration of justice. Second, as we have discussed, Respondent's mental illness and methamphetamine addiction significantly affected his conduct. Third, due to Respondent's conduct clients were actively harmed, the public was harmed, and the integrity of the legal profession suffered. And fourth, Respondent presented mitigating evidence connected to his mental illness and addiction; the OBA presented significant evidence in aggravation; and Respondent's own attempts to manipulate the criminal justice system and disciplinary process are also factors in aggravation.

¶47 We consider discipline using both the Rule 7 convictions and our Rule 6 conclusions. Willis, 2022 OK 15Silvernail, 2022 OK 68Willis, 2002 OK 15504 P.3d at 1153

CONCLUSION

¶48 Consistently throughout the Rule 6 and Rule 7 proceedings, Respondent has tried to minimize the nature of his actions, civil and criminal, and their consequences to both his clients and the profession. In his criminal proceedings as well as this disciplinary proceeding Respondent has used his status as a lawyer to argue for, and receive, special privileges. Time after time Murray County law enforcement gave Respondent lenient treatment in traffic stops and welfare checks, despite his erratic and occasionally violent actions. The Murray County District Attorney's office dismissed a felony charge, allowed Respondent to plead to deferred sentences, agreed to modify those sentences so they could be discharged while these disciplinary proceedings were pending, and then dismissed the cases to give Respondent a perceived advantage in these proceedings. Respondent has suggested to both the PRT and this Court that clients who complained about him, either to Judge Duck or the OBA, were neither unhappy nor harmed by his actions. He has refused to address the serious charge involving the shotgun in Count V, instead invoking the Fifth Amendment. While admitting he engaged in the unauthorized practice of law, he suggested the problem was really his failure to complete MCLE hours, not the unauthorized representation. He has consistently failed to show the good judgment we expect of a lawyer. Silvernail, 2022 OK 68

COSTS

¶49 The OBA filed an application to assess costs of $9,252.87, pursuant to Rules 6.13 and 6.16, Rules Governing Disciplinary Proceedings, 5 O.S. ch. 1

RESPONDENT IS DISBARRED
AND ORDERED TO PAY COSTS OF $9,252.87

CONCUR: Winchester, Edmondson, Combs, Darby and Kuehn, JJ.

CONCUR IN PART/DISSENT IN PART: Kauger, J.

DISSENT: Kane, C.J.

NOT PARTICIPATING: Rowe, V.C.J., and Gurich, J.

KAUGER, J., concurring in part/dissenting in part:

"I would adopt the recommendation of the Professional
Responsibility Tribunal of two years and one day."

KANE, C.J., dissenting:

"I would suspend Respondent for three years."

FOOTNOTES

State v. Cheek Respondent was ordered to appear or face sanctions. In McElroy v. Tomlinson Respondent was removed from the case and ordered to immediately return all unused retainer fees. In State v. Fullerton Respondent was removed as counsel. In State v. McCaleb Respondent was ordered to return all unused retainer fees. In State v. Thompson Respondent was removed, reinstated, and removed from the case again.

before any charges are brought. 22 O.S. 305.1